IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 31, 2021

## STATE OF TENNESSEE v. RASHAWN BOSEMAN-HUMES

**Appeal from the Circuit Court for Blount County
Nos. C-26211, C-26212    Tammy M. Harrington, Judge**

_____

### No. E2020-00938-CCA-R3-CD

_____

The Defendant, Rashawn Boseman-Humes, appeals the trial court's order revoking his probation with respect to his convictions for attempted possession of a Schedule I controlled substance with the intent to sell or deliver and introduction of contraband into a penal facility. On appeal, the Defendant asserts that the trial court erred in finding that he violated the terms of his probation and in ordering him to serve his sentences in confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

J. Liddell Kirk (on appeal), Knoxville, Tennessee, and Mack Garner (at hearing), District Public Defender, for the appellant, Rashawn Boseman-Humes.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Mike L. Flynn, District Attorney General; and Tyler Parks, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

The judgments, entered on October 12, 2018, reflect that the Defendant pleaded guilty to attempted possession of a Schedule I controlled substance with the intent to sell or deliver and introduction of contraband into a penal facility. The trial court imposed consecutive sentences of five years for each conviction with one year to be served in confinement followed by community corrections. The appellate record reflects that the

Defendant's community corrections sentence was subsequently revoked and that the Defendant was placed on probation. On March 13, 2020, a probation violation warrant was issued, alleging that the Defendant violated the terms of his probation as a result of his arrest on March 3rd for simple possession of Xanax and public intoxication.

At the revocation hearing, Officer Khalil Whitehead of the Blount County Sheriff's Office testified that on March 3, 2020, at approximately 11:26 p.m., he went to a home in a residential neighborhood in response to a call regarding a disturbance. When he arrived, he observed the Defendant standing off of the right side of the road and yelling. Officer Whitehead stated that the Defendant was arguing with the homeowners and residents of the home because they wanted him to leave and he did not want to do so. Officer Whitehead described the Defendant as unsteady on his feet with glossy eyes. The Defendant's speech was slurred to the point that Officer Whitehead had to ask the Defendant to repeat himself several times. When Officer Whitehead brought the Defendant toward the patrol car in order to record him on the dash camera, the Defendant was unable to stand on his own and had to lean on the patrol car for support. Although the Defendant had a place to go and someone to drive him, he argued with the person who had offered to drive him. Officer Whitehead testified that he had to take the Defendant into custody "because he was standing out near the roadway where he could have injured himself or others."

Officer Whitehead testified that at one point, as they were walking out of the house where the Defendant had returned to gather his belongings, a small baggie fell out of the pocket of the Defendant's jacket. The baggie contained a small blue pill with "Xanax" written across it, and Officer Whitehead testified that he verified that the pill was Xanax though the website drug.com. The Defendant maintained that the residents had planted the pill on him. Officer Whitehead subsequently charged the Defendant with public intoxication and simple possession of Xanax.

On cross-examination, Officer Whitehead testified that the Defendant resided at the home and had been arguing with his girlfriend throughout the day. Officer Whitehead witnessed a portion of the argument when the Defendant returned inside the home to gather some of his belongings while preparing to leave. Officer Whitehead acknowledged that the Defendant cooperated upon his arrest.

Officer Whitehead testified that he did not send the pill to the Tennessee Bureau of Investigation for testing and did not have the Defendant submit to a blood test. On redirect examination, Officer Whitehead stated that he asked the Defendant if he had taken any drugs, and the Defendant responded that he told the others inside the home that he had taken Xanax but that he had lied to the residents in order to obtain a "reaction."

On re-cross examination, Officer Whitehead testified that he did not believe he could have arrested the Defendant just based upon his observations of the Defendant by the side of the road, prior to observing the Defendant and speaking with him. Officer Whitehead stated that he took the Defendant into custody after the Defendant, while retrieving his belongings inside the home in preparation to leave, continued to argue with the person who had offered to drive him away. Officer Whitehead testified that the Defendant's continued behavior at that point was additional proof that led the officer to believe the Defendant was intoxicated to a point that the Defendant's safety was compromised.

Mr. Robert Morsch, a probation officer, testified that he supervised the Defendant for approximately one month prior to issuing the probation violation warrant based upon the Defendant's obtaining new charges. Mr. Morsch stated that the only other issue involving the Defendant was his failure of a drug screen during the initial intake.

The Defendant testified that prior to his arrest on March 3, 2020, he had been living at the residence for approximately one month with his then-girlfriend, the homeowner, and others. The Defendant maintained that Officer Whitehead arrived at the residence in "broad daylight" at around 4:00 p.m. and that the officer was mistaken that he arrived during the nighttime. The Defendant said he did not see anyone call the police and did not know why the officer was there. The Defendant stated that when the officer arrived, the Defendant was standing in the yard by the front porch with all of his belongings and that he was planning to walk to a friend's house after "a dispute about some past events."

The Defendant testified that Officer Whitehead informed the Defendant that he received a complaint of a disturbance, and the Defendant denied that a disturbance occurred. The Defendant testified that when he told the officer that he was going to walk to a friend's house, the officer told him that he could not allow the Defendant to walk. When the Defendant asked if he was being detained, Officer Whitehead told him that he was not being detained but that the officer was just ensuring that no physical altercation had occurred that would require him to arrest the Defendant. The Defendant denied that a physical altercation occurred and told the officer that he was just planning to leave. The Defendant stated that Officer Whitehead spoke to the other residents and that when he returned, the Defendant asked whether he could leave. Officer Whitehead told the Defendant that he could call someone for a ride, and the Defendant responded that he told Officer Whitehead that his cell phone's battery was not charged.

The Defendant testified that at some point, Officer Whitehead stepped onto the front porch and spoke to the other residents. Officer Whitehead then called the Defendant to the porch and informed him that they had stated that the Defendant was

intoxicated and had been drinking alcohol. The Defendant replied that he did not drink alcohol. The Defendant stated that Officer Whitehead found one pill that appeared to be Xanax on the floor of the porch, asked him what it was, and picked it up. The Defendant responded that he did not know because he had not been on the porch and did not take pills. The Defendant testified that the pill was not inside a baggie. The officer told him that he was under arrest, and the Defendant became "irritated" because he knew that his probation would be violated and he would be returned to prison. The Defendant denied any knowledge of the pill and maintained that he had not ingested any alcohol or drugs that day.

The Defendant testified that he was incarcerated from March of 2019 until January 2020 and that he had been released from jail thirty-five or thirty-six days prior to his arrest on March 3rd. He was supporting himself through handyman work and was attempting to have his probation transferred to Virginia so that he could help care for his sick mother.

On cross-examination, the Defendant continued to maintain that he was arrested during the daytime hours and stated that he was not booked into jail until later that night. He denied using Xanax and said he used marijuana to relieve his headaches. He denied using any drugs between his release from jail in January 2020 and his arrest and said he failed the drug screen as a result of smoking marijuana while incarcerated.

The Defendant acknowledged that in 2013, he was placed on probation for a robbery conviction, that his probation was revoked twice, and that he ultimately served his sentence in confinement. He also acknowledged that in March of 2019, while he was serving his community corrections sentence in the present case, he was arrested for simple possession of a controlled substance and later pleaded guilty to the offense. As a result, his community corrections sentence was revoked, and he was ordered to serve one year in confinement followed by probation.

In rebuttal, the State presented the testimony of Lieutenant Doug Moore with the Blount County Sheriff's Office, who reviewed the arrest report of the Defendant and compared the time listed on the report to the time reflected in the recording from the dash camera of Officer Whitehead's patrol car. Lieutenant Moore testified that according to the report, the disturbance call was received at 11:26 p.m., and the video recording reflected that Officer Whitehead arrived at the residence at 11:33 p.m.

In revoking the Defendant's probation, the trial court found Officer Whitehead's testimony to be "very credible." The trial court noted that Officer Whitehead observed that the Defendant had glossy eyes and slurred speech, was unsteady on his feet, and had to lean on the patrol car for support. The trial court credited the testimony of Officer

- 4 -

Whitehead and Lieutenant Moore that the Defendant was arrested at nighttime and found that the Defendant's actions occurred at a time and location where the Defendant could have posed a danger to himself and others. The trial court concluded that the State established by a preponderance of the evidence that the Defendant was intoxicated and in possession of Xanax. Accordingly, the trial court revoked the Defendant's probation.

The trial court noted that the Defendant pleaded guilty to the charges on October 12, 2018, that he signed his paperwork to begin his community corrections sentence on January 15, 2019, and that he was charged with violating the terms of his community corrections sentence on February 8, 2019. The trial court noted that the Defendant's community corrections sentence was revoked and that he was sentenced to one year in confinement followed by supervised probation. The Defendant was released from confinement in January of 2020 and was arrested on new charges on March 3rd. The trial court noted that the Defendant previously failed to comply with the terms of supervised probation for a prior conviction. Noting that the Defendant had violated the terms of his alternative sentence on two occasions shortly after his release from confinement, the trial court ordered the Defendant to serve his sentence in confinement.

### ANALYSIS

The Defendant contends that the trial court erred in finding that he violated the terms of his probation. He maintains that the State failed to establish by a preponderance of the evidence that he was in possession of Xanax because the pill was never sent to the Tennessee Bureau of Investigation for testing. He maintains that the State failed to establish the offense of public intoxication by a preponderance of the evidence because the officer only observed him for a short period of time and the Defendant was not in a public place. The Defendant also challenges the trial court's order requiring him to serve his sentence in confinement.

A trial court has the discretion to revoke probation if it finds by a preponderance of the evidence that a defendant violated the conditions of probation. *See* T.C.A. §§ 40-35-310(a), -311(e); *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). An abuse of discretion in revoking a defendant's probation occurs only where there is "no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Shaffer*, 45 S.W.3d at 554. A trial court finding that a defendant has violated the conditions of probation is statutorily authorized to: "(1) order confinement; (2) order execution of the sentence as originally entered; (3) return the Defendant to probation on appropriate modified conditions; or (4) extend the Defendant's probationary period by up to two years." *State v. Brandon L. Brawner*, No. W2013-01144-CCA-R3-CD, 2014 WL 465743, at *2 (Tenn. Crim. App. Feb. 4, 2014) (citing T.C.A. §§ 40-35-308(a), (c), -310, -311(e)(1); *State v. Hunter*, 1 S.W.3d 643, 648 (Tenn.

1999)).  In exercising its authority, a trial court has no obligation to provide a defendant already on probation "'a second grant of probation or another form of alternative sentencing.'"  *State v. Tracy Arnold*, No. W2018-00307-CCA-R3-CD, 2018 WL 6266279, at *1 (Tenn. Crim. App., Nov. 30, 2018).

The trial court credited Officer Whitehead's testimony that based on his observations, he concluded that the Defendant was intoxicated.  The Defendant had glossy eyes and slurred speech, was unsteady on his feet, and had to lean on the patrol car for support.  He was arguing with the other occupants of the home when the officer arrived and continued to argue with them while retrieving his belongings.  A baggie containing a small blue pill with "Xanax" written across it fell out of the Defendant's pocket, and Officer Whitehead confirmed that the pill was Xanax using a website.  The Defendant admitted to Officer Whitehead that he had told the occupants of the home that he had been taking Xanax.  We conclude that this evidence is sufficient to establish simple possession of Xanax by a preponderance of the evidence.  *See* T.C.A. § 39-17-418(a), (c)(1) (providing that a person who knowingly possesses a controlled substance commits a Class A misdemeanor).  The Defendant asserts that his actions did not occur in a public place as necessary to establish public intoxication.  *See* T.C.A. §§ 39-11-106(a)(31) (defining public place); 39-17-310 (setting forth the offense of public intoxication).  However, we need not reach this issue as the State established by a preponderance of the evidence that the Defendant violated the terms of his probation by committing the offense of simple possession of a controlled substance.

Once the trial court found that the Defendant violated the terms of his probation, the trial court ordered the Defendant to serve his sentence in confinement, noting that he had violated the terms of release twice and that both violations occurred shortly after his release from confinement.  The trial court's decision was well within its statutory authority.  We, therefore, conclude that the trial court did not abuse its discretion and that the Defendant is not entitled to relief.

### CONCLUSION

Upon review of the record, the parties' briefs, and the applicable law, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE

- 6 -